# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---

**MICHAEL SERRICCHIO,**
  *Plaintiff,*

  *v.*

**WACHOVIA SECURITIES, LLC. and**
**PRUDENTIAL SECURITIES, INC.,**
  *Defendants.*

**No. 05-cv-1761 (JBA)**

---

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Michael Serricchio brought this action for what he alleges to be the defendants' failure to reinstate him to the financial advisor position which he held prior to being called to active duty in the United States Air Force in 2001, in contravention of the Uniform Services Employment and Reemployment Act (USERRA), 38 U.S.C. § 4301 *et seq.* The defendants now move for summary judgment on his claims and their counterclaims; for the reasons set forth below the defendants' motion will be denied in part and granted in part.

## I.   Facts and procedural background

In the autumn of 2001, when he was called to active duty, Michael Serricchio was employed by defendant Prudential Securities, Inc. as a financial advisor in its Stamford,

Connecticut office. Serricchio had moved to Prudential in 2000 from Morgan Stanley

Dean Witter, where he had built up a book of business as a commission-based broker

advising on, and executing securities transactions for, retail clients. He brought these

accounts with him when he joined Prudential, and signed an employment agreement

which set forth, among other things, that Prudential would pay him $229,582 of

"transitional compensation." A promissory note executed by the parties provides that

Serricchio was to repay the amount over the course of fifty-five months.

During his employment with Prudential, Serricchio was also a member of the

United States Air Force reserve, and, following the events of September 11, 2001, was

called to active duty. At the time of his activation, Serricchio managed approximately

237 accounts totaling $4.1 million in assets,[1] which plaintiff asserts generated $75,687 in

commission income for him between September 2000 and September 2001.[2] He received

his activation orders in late September 2001, notified his employer on September 29,

2001,[3] and reported for duty the next day. In the notification letter he faxed to his

supervisor, Serricchio noted that he hoped to "be able to work for Prudential in whatever

city I'll be in," and that his "biggest concern" was that "Pru w[ill] cut me loose," Defs.' Ex.

E.

---

[1] Defs.' Local R. 56 Stmnt. at ¶¶ 100, 152.

[2] Pl.'s Local R. 56 Stmnt. at ¶ 35.

[3] Defs.' Ex. E.

Prior to reporting for duty, Serricchio made arrangements for the maintenance of his client accounts by having a Prudential colleague with whom he closely worked, Joseph Zinacola, put in charge of the accounts.[4] Serricchio also executed an agreement with Prudential which specified that he would be paid his regular salary for ninety days, in exchange for which he would remit to Prudential the amount of money which the United States paid him for his service.[5] Serricchio was eventually paid for twelve months rather than the three months which the agreement called for.[6] He remitted no military salary in return.

Serricchio was honorably discharged from the Air Force in October 2003.[7] In the interim, his workplace had undergone major changes. Prudential had sold its brokerage business to Wachovia Corporation, which formed a new subsidiary, Wachovia Securities, LLC ("Wachovia"), the co-defendant and counterclaimant here.[8] Wachovia had moved the Stamford operations to Westport, Connecticut, trusted co-worker Zinacola had been terminated, and the defendants had changed their business model to deal with less-wealthy and lower-volume clients via a national telephone customer service center rather

---

[4] Defs.' Local R. 56 Stmnt. at ¶¶ 89-95.

[5] Defs.' Local R. 56 Stmnt. at ¶ 71.

[6] Defs.' Local R. 56 Stmnt. at ¶ 73.

[7] Defs.' Local R. 56 Stmnt. at ¶ 83.

[8] The plaintiff does not dispute that Wachovia is Prudential's successor, *see* Defs.' Local R. 56 Stmnt at ¶ 112, and that as such, Wachovia is now the holder of the promissory note governing repayment of the transitional compensation and the party asserting the breach of the military salary repayment agreement.

than through individual brokers.[9]  Serricchio was upset to learn that as a result of a combination of factors, many of his former clients had either been assigned to the national call center, or had ceased to be clients of Wachovia.  Moreover, Serricchio discovered that on January 2, 2003, Prudential settled a dispute with one of Serricchio's clients in his absence, paying $33,177.16 to resolve a customer complaint involving Serricchio, his sales assistant, and his manager.[10]  Prudential amended Serricchio's broker's license to reflect the settlement and the client's allegation that his signature had been forged and trades had been executed without authorization.[11]

On December 1, 2003, Serricchio, through counsel, dispatched a letter to Wachovia requesting that he be reinstated in accordance with USERRA.[12]  Following negotiations, Serricchio met with branch officials at Wachovia's Westport office, and was offered reinstatement to a financial advisor position which included the return of any of his remaining accounts, a $2,000 per month advance against his commissions, and the opportunity to cold-call for new client accounts.[13]  Mr. Serricchio left the office that day and did not return;[14] Wachovia terminated Mr. Serricchio on June 2, 2004 for job

---

[9] Defs.' Local R. 56 Stmnt. at ¶ 99.

[10] Serricchio Dep., Pl.'s Ex. A at 190:12-192:1.

[11] Def. Ex. N.

[12] Defs.' Local R. 56 Stmnt. at ¶ 126.

[13] *Id.* at ¶ 134.

[14] Pl.'s Local R. 56 Stmnt. at ¶ 135.

abandonment.[15]

## II.     The summary judgment standard

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party establishes that there is no genuine issue of material fact to be resolved at trial and that the moving party is entitled to judgment as a matter of law, *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), where the materiality of a fact is determined by the substantive law that governs the case, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In this inquiry, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *id.*  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In making this determination, the Court draws all reasonable inferences in the light most favorable to the party opposing the motion, *id.* at 587.

## III.     Mr. Serricchio's claims

In Count One of his amended complaint, Mr. Serricchio alleges that the defendants violated USERRA by failing to promptly reinstate him to an appropriate

---

[15] Pl.'s Local R. 56 Stmnt. at ¶ 139.

position, failing to manage his book of business in his absence, and constructively discharging him without cause.[16] Mr. Serricchio also asserts a breach of contract claim for the defendants' failure to pay his transitional compensation (Count 2), a negligence claim for the manner in which the defendants handled his book of business in his absence (Count 4), and an unjust enrichment claim asserting that Wachovia improperly profited from his book of business after constructively discharging him (Count 6). The defendants now move for summary judgment on all remaining counts.

### A. USERRA Violation (Count One)

#### 1. Defendants' alleged failure to promptly reinstate Serricchio

The defendants' first ground for summary judgment on Count 1 posits that Serricchio failed to apply for reemployment as required by USERRA. While the defendants acknowledge receipt of Serricchio's counsel's letter dated December 1, 2003, requesting "reinstatement to his Financial Advisor position," Defs.' Local R. 56 Stmnt. (Doc. # 59-3) at ¶¶ 126-129, and admit that Wachovia "determined" that "Serricchio should be offered reinstatement," *id.* at ¶ 129, the defendants contend that Serricchio never applied for reinstatement because (1) the letter contained what the defendants viewed as a conditional request, and (2) Mr. Serricchio withdrew his application by

_____

[16] Mr. Serricchio has abandoned the discrimination and retaliation portions of his USERRA claim (Count 1), and has dropped his termination-in-contravention-to-public-policy claim (Count 3), *see* Pl.'s Opp'n to Summ. J. at 17 n.18.

"abandoning" his job at Wachovia.

Under USERRA, servicemembers called away to military service "shall be promptly reemployed" by their former employers upon discharge, 38 U.S.C. § 4313(a), provided that a servicemember whose period of service lasted for more than 180 days "notif[ies] the employer . . . of [his] intent to return to a position of employment with such employer . . . by submitting an application for reemployment with the employer not later than 90 days after the completion of the period of service," 38 U.S.C. § 4312(e)(1)(D). Heeding the Supreme Court's admonition that employment protections afforded servicemembers are "to be liberally construed for the benefit of those who left private life to serve their country," *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946) (construing USERRA's predecessor statute, the Selective Service and Training Act of 1940[17]), the Second Circuit has held that where a returning servicemember's application for reemployment puts the employer "on ample notice of his claim" to reemployment, "technical failure[s]" in the form of the application which do not prejudice the employer will not prevent USERRA's rehiring mandate from binding the employer, *Martin v. Roosevelt Hospital*, 426 F.2d 155, 159 (2d Cir. 1970). Moreover, the *Martin* court adopted the First Circuit's holding that a veteran does not fail to invoke

---

[17] When codifying USERRA, Congress made clear that the case law which had interpreted earlier incarnations of USERRA's protections is to be applied to USERRA as well. *See* H.R. Rep. No. 103-65 (1993) ("The Committee wishes to stress that the extensive body of case law that has evolved over that period, to the extent that it is consistent with the provisions of this Act, remains in full force and effect in interpreting these provisions. This is particularly true of the basic principle established by the Supreme Court that the Act is to be 'liberally construed.'") (citing *Fishgold v. Sullivan Drydock and Repair Corp.*, 328 U.S. 275 (1946); *Alabama Power Co. v. Davis*, 431 U.S. 581 (1977)).

USERRA's reemployment provision "'merely because in applying for reemployment he couples such application with a demand for something he erroneously believes to be his due,'" *id.* (quoting *Trusteed Funds, Inc. v. Dacey*, 160 F.2d 413, 422 (1st Cir. 1947).

However, there are limits to the liberality with which USERRA is to be applied when determining whether a plaintiff has properly applied for reinstatement. In *McGuire v. United Parcel Service*, the Seventh Circuit affirmed a grant of summary judgment to a defendant employer where the employee had only casually inquired about reemployment by asking his former supervisor, and then sued instead of contacting the human resources department as directed by the supervisor, 152 F.3d 673, 677-678 (7th Cir. 1998). In *Baron v. United States Steel Corp.*, the district court held that truly conditional requests for reinstatement are not accorded protection under USERRA. There, the defendant employer was granted summary judgment on the plaintiff's USERRA failure-to-rehire claim where the plaintiff made only verbal inquiries about employment, and made clear to the defendant's employment office that he would not seek reemployment if his college applications were successful. Finding that the "plaintiff demonstrate[d] that he did not intend to apply for work until he heard from the University of Pittsburgh," the court held that applications of a "conditional nature" do not trigger USERRA's reinstatement protections. 649 F. Supp. 537, 541-542 (N.D. Ind. 1986).

The text of Mr. Serricchio's December 1, 2003 letter is problematic for defendants' position. The first sentence states that Mr. Serricchio "has now completed

his active duty service with the United States Air Force and seeks reinstatement to his Financial Advisor position . . . with the full reemployment rights guaranteed by" USERRA, Serricchio Dep. Ex. 16. Such a request – noting that Serricchio "seeks reinstatement," and explicitly referring to USERRA – gave the recipient "ample notice" of Serricchio's desire to be reinstated, *Martin*, 426 F.2d at 159. Unlike the purported application tendered by the appellant in *McGuire*, Serricchio (albeit through his counsel) pursued his reinstatement with diligence, and did not ignore any direction from the employer as to the proper protocol for making his request.

In *Baron v. United States Steel*, by contrast, the occurrence of the plaintiff's request for reinstatement was itself predicated upon a condition precedent, namely, his rejection from college: the plaintiff made clear that he would not apply for reinstatement in the first instance if he were accepted to college, which he was. Here, Serricchio has asserted an unqualified request for reinstatement, even though he also included with that request a list of things needing to be remedied by the defendants in connection with reinstatement. Although the letter contains an enumeration of actions taken by defendants which plaintiff viewed as damaging his career, his reinstatement request was not expressly conditioned on the employer's meeting his demands, only red flagging additional USERRA rights implicated by his reinstatement request. Because Serricchio's letter was, as a matter of law, a proper USERRA reinstatement request, summary judgment will be denied to the defendants on this ground.

2. **Whether defendant met its reemployment obligation under 38 U.S.C. § 4316**

Mr. Serricchio's USERRA count further alleges that Wachovia failed to reinstate him to a position commensurate with that guaranteed to him by 38 U.S.C. § 4316(a). The defendants seek summary judgment on this ground, arguing that as a matter of law their offer fulfilled the duty which is owed under USERRA.

Section 4316(a) mandates that a servicemember who is reemployed following his or her return from active duty "is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that [he] would have attained if the person had remained continuously employed." USERRA's regulations explain that this "escalator position" means that "the employee is entitled to reemployment in the job position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service," *i.e.*, reemploying the servicemember "in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she would have attained if not for the period of service," 20 C.F.R. § 1002.191. The Supreme Court has described the escalator principle as protecting a servicemember "against receiving a job inferior to that which he had before entering the armed services," *Fishgold*, 328 U.S. at 284.

Wachovia relies on the fact that Mr. Serricchio was offered a financial advisor position with a $2,000 month draw against his commissions, return of all of his

remaining accounts, and the opportunity to build a new book of business through cold-calling, as undisputed proof of their fulfillment of their § 4316 employer obligations. The defendants also argue that while § 4316's seniority provisions have bearing upon benefits which accrue with each advancing year of an employee's service, the mere passage of time does not guarantee increases in a broker's business to which the escalator principle could be applied. The defendants maintain that it is impossible to gauge what level of compensation is due to a broker working on commission, as illustrated by the stock selloff which occurred in the fall of 2001 and the fact that commission-based brokers generate their income based upon daily transactions: "[financial advisors] start at zero every day from a pay perspective." Nancy Gibbons Dep. (Def's Ex. F) at 40:13-14.

The parties do agree that the defendants offered to return Mr. Serricchio's remaining accounts to him upon his reemployment with Wachovia, *see* Pl.'s Local R. 56 Stmnt. (Doc. # 78) at ¶ 129, but disagree as to the diligence with which defendants inventoried those accounts and whether all of the remaining accounts were in fact returned, *id.* The parties also dispute the likelihood of promptly rebuilding his book of business to its pre-deployment status from cold-calling alone, so as to provide him with equivalent earning opportunity consistent with USERRA's requirements, *id.* at ¶¶ 167, 168.

Because there are factual disputes over the sufficiency of what Wachovia did and what it could have done which are at the heart of Mr. Serricchio's § 4316 claim, a trial is

necessary to determine whether Wachovia fulfilled its reinstatement duty. Therefore, the defendant is not entitled to summary judgment on this ground.

### 3. Defendants' duty to preserve Serricchio's accounts under USERRA

Mr. Serricchio's USERRA count further asserts that the defendants owed him a statutory duty to preserve the accounts in his book of business while he was in service. The defendants argue that USERRA imposes no such duty as a matter of law and seek summary judgment on the claim. In Mr. Serricchio's contemplation, the preservation of his book of business was directly correlated to his ability to make a living as a commission-based financial advisor upon his return from service, and the defendant's alleged squandering of his book resulted in the defendants offering Serricchio a greatly-reduced earning potential upon his return. Serricchio points to the testimony of Carson Coyle, who admits that the defendants realized that a failure to maintain and cultivate his book in Serricchio's absence would result in the diminution of Serricchio's livelihood as a broker upon reinstatement, *see* Coyle Dep., Pl.'s Ex. D at 177:6-17.

In actuality, Mr. Serricchio's argument on this claimed dereliction of statutory duty is subsumed by his broader claim that Wachovia breached its duty under § 4316(a) to reinstate him to the position which he would reasonably have had, if he not been called to active military duty.

USERRA and its interpretive regulations underscore the flexibility an employer has to reinstate a veteran to a comparable – not necessarily identical – position.  An employer "may have the option, or be required, to reemploy the employee in a position other than the escalator position," 20 C.F.R. § 1002.191.  The reinstatement position may be "a position comparable to the escalator or pre-service position; or, *the nearest approximation* to one of these positions," 20 C.F.R. § 1002.192 (emphasis added).  An employer may even be required to move another employee in order to make room for the returning veteran, *see Nichols v. Department of Veterans Affairs*, 11 F.3d 160, 163 (Fed. Cir. 1993) ("A returning veteran will not be denied his rightful position because the employer will be forced to displace another employee").

Case law applying USERRA's statutory predecessor in the analogous context of salespeople with client accounts illustrates that it is the equivalency of the offered position – and not the specific sales accounts yielding the earning potential – which matters when considering whether an employer has met its duty under § 4316(a).  In *Loeb v. Kivo*, an outside salesman of artificial flowers returned from the Second World War to find that "[t]he buyers' market which had existed" before the war "had been converted into a strong sellers' market," and thus now "customers came to the firm's office to look at samples and to place orders," obviating the need for outside salesmen as he had been, 169 F.2d 346, 348 (2d Cir. 1948).  The defendant claimed that it had no duty to reinstate Loeb because of the changed market conditions, but the Second Circuit

disagreed, holding that while "[i]t is true selling had become less difficult . . . this alone would not excuse compliance with the statute," and noting that samples still had to be made up, customers needed to be dealt with, orders had to be taken, and some of the plaintiff's former clients would need servicing, *id.* at 349. The Circuit's focus in *Loeb* was on the measures which the employer could have taken to provide Loeb with the mandated seniority, benefits, earning potential, and chance for advancement despite marked alterations in its clientele wrought by market conditions. The Second Circuit reached a similar conclusion in *Major v. Phillips-Jones Corp.*, in which a traveling salesman returning from the Second World War requested reinstatement, was told that his pre-war territory had been assigned in his absence to another salesman, and was offered a different, more lucrative territory. In response to Major's claim to be entitled to his old sales territory by law, the Circuit held that the plaintiff "misconceive[d] his rights" when he insisted upon his old territory, and concluded that § 4316(a) "in no way requires reinstatement of the veteran to his former position but only that he be given a position of equal seniority, status, and pay" to that which he would have had if not for his period of service, 192 F.2d 186, 188 (2d Cir. 1951). The district court's directed verdict in favor of the defendant was affirmed because the defendant had offered Major a territory which exceeded the opportunities of his former one.

Additional guidance on the scope and nature of an employer's reinstatement duty to returning veterans is found in *Schwetzler v. Midwest Dairy Products, Inc.*, in which the

Seventh Circuit affirmed dismissal of a veteran's suit where the veteran had returned home from the war and had been offered an alternative soft drink sales route comparable to his old route, which had been assigned to someone else during his time overseas. Holding that the plaintiff was merely entitled to "be given [his former] position or a comparable one," the court concluded that the route offered "afford[ed] comparable opportunities as to seniority, status, and pay," and thus, that the defendant had discharged its statutory duty, 174 F.2d 612, 612-613 (7th Cir. 1949).

Guided by these cases, it is evident that the defendants' duty under § 4316(a) is not a duty to provide Mr. Serricchio his exact previous book of business, so long as what is provided gives him the opportunity to reenter the workforce with comparable earning potential and chance for advancement as his own book of business provided prior to his service, regardless of whether the same clients are in the substituted book. The parties dispute whether the arrangement offered Mr. Serricchio upon his return fulfilled that duty. Mr. Serricchio claims that the defendants could have assembled for him a new, comparable book of business by taking a few accounts from each of the other financial advisors in the office. Wachovia claims that its offer sufficed. This factual dispute will be left to the province of the jury for determination of whether Wachovia has met its § 4316(a) burden.

4.     **Whether the defendants terminated Serricchio without cause, in contravention of § 4316(c)(1)**

The plaintiff's first count also alleges that the conditions under which Wachovia reinstated Mr. Serricchio were so onerous that he had no choice but to leave, amounting to constructive termination, in contravention of USERRA's guarantee of employment for one year absent cause for termination.  The defendants have moved for summary judgment on this claim, arguing that as a matter of law, the conditions of Mr. Serricchio's reemployment at Wachovia fell far short of the conditions which the Second Circuit deems required for constructive discharge.

"Under the constructive discharge doctrine, [whether] an employee's reasonable decision to resign because of unendurable working conditions" is an objective inquiry, namely, "[d]id working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004) (internal quotation and citation omitted).  Because a court draws all reasonable inferences in favor of the non-movant at summary judgment, "whether to credit [a plaintiff]'s evidence and how, objectively, to assess the endurability of h[is] working conditions" are generally "questions of fact to be answered by the jury, not matters of law for the court on summary judgment," *Fitzgerald v. Henderson*, 251 F.3d 345, 367 (2d Cir. 2001).

Here, by Serricchio's telling, he returned to what had been a financially comfortable position to find a job in which he had no book of business and had to begin

anew by cold-calling prospective customers in order to pay off the $2,000 monthly advance which Wachovia offered him as compensation, leaving him incapable of supporting himself and his family. Given the contrast between defendants' optimism for plaintiff's prospects and Mr. Serricchio's pessimism, reasonable jurors could find the conditions under which Serricchio was offered reemployment "so intolerable that a reasonable person in the employee's position would have felt compelled to resign," *Suders*, 542 U.S. at 141. Therefore, disposition of the issue of whether Wachovia violated § 4316(c)(1) by constructively discharging the plaintiff will be left for trial and summary judgment is denied on this ground.

### B.    Negligence (Count Four)

Mr. Serricchio presses a negligence claim based on the defendants' handling of his book of business during his absence, *see* Amended Compl. at ¶ D-18. The defendants have moved for summary judgment on this count, arguing that the defendants owed Mr. Serricchio no common law duty of care to preserve his book of business for him upon return. The plaintiff relies on no specific statute, contract, or case precedent as grounds for his claim of the existence of this employer duty, only Mr. Coyle's recognition that frittering away Serricchio's book in his absence would foreseeably adversely impact Serricchio's livelihood, thus, in plaintiff's view, obliging defendants to safeguard the book and plaintiff against such harm.

In Connecticut, "[t]here can be no actionable negligence . . . unless there exists a cognizable duty of care," *Waters v. Autuori*, 676 A.2d 357, 360 (Conn. 1996). A duty of care "may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act," *Ward v. Greene*, 839 A.2d 1259, 1265-1266 (Conn. 2004). The Connecticut Supreme Court has held that the "threshold inquiry" conducted to determine the existence of a duty is "whether the specific harm alleged by the plaintiff was foreseeable to the defendant," *Jaworski v. Kiernan*, 696 A.2d 332, 336 (Conn. 1997) (internal quotations omitted). Nonetheless, "[a] simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists," because "while it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world," *Perodeau v. City of Hartford*, 792 A.2d 752, 768 (Conn. 2002). Thus, in Connecticut, "[t]he final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results," *id.*

In Connecticut, the at-will employment arrangement imposes upon employers no duty to provide for continuity of employment of any particular duration, because "at will [employment] grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability," *Thibodeau v. Design Group One*

*Architects, LLC*, 802 A.2d 731, 735 (Conn. 2002) (internal quotation omitted). In acknowledgment of the at-will doctrine, the Connecticut courts have refused to impose a duty upon employers to conduct themselves in a manner which extends the at-will relationship into something more protective of employees' livelihoods, *see, e.g. Morris v. Hartford Courant Co.*, 513 A.2d 66, 68 (Conn. 1986) (no employer duty to conduct a "reasonabl[e] and adequate[]" investigation before terminating an employee "false[ly] but negligently . . . accus[ed] of criminal conduct"); *Emerick v. Kuhn*, 737 A.2d 456, 475 (Conn. App. Ct. 1999) (no employer duty to adhere to its own code of ethics).

While Mr. Serricchio adduces some evidence of recognition of the consequences of mishandling of his book of business, he offers no authority for his theory that the terms and conditions of his at will employment should therefore modified to reflect a duty on the part of the defendants to maintain his book of business, *i.e.*, that his income potential be guaranteed. The plaintiff offers no explanation why imposing such duty would not transform the at-will arrangement and contravene the Connecticut Supreme Court's direction that courts are to balance the claim of a duty arising from foreseeability of harm against "the fundamental policy of the law," *Perodeau*, 792 A.2d at 768. In the absence of a duty that the defendants owed Mr. Serricchio to preserve or protect his book of business in his absence, summary judgment will be granted to the defendants on this count.

## C.    Unjust enrichment (Count Five)

Finally, Mr. Serricchio alleges that the defendants have been unjustly enriched by the patronage of his clients which the defendants "ha[ve] and will receive," Amended Compl. at ¶ F-21.  The defendants have moved for summary judgment on this claim, arguing that a claim for unjust enrichment will not lie where an enforceable written agreement exists, to wit, the employment agreement which stipulated that he "shall have no right or interest in any revenue generated at [Wachovia Securities] by any customer, after you leave the firm regardless of the circumstances under which you may leave or be terminated," Defs.' Ex. E at ¶ 4(g).

In his opposition, Mr. Serricchio points to the language of USERRA, that it "supersedes any . . . contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by" it, 38 U.S.C. § 4302(b), and argues that in guaranteeing employment for a year, 38 U.S.C. § 4316(c)(1), USERRA's protection means that the defendants may not "retain commissions earned on plaintiff's book of business while depriving plaintiff of his opportunity to benefit from his portfolio," Pl.'s Opp'n to Summ. J. at 35.

Under New York law,[18] unjust enrichment is an equitable doctrine which "rests, generally, on the principle that a party should not be allowed to enrich himself at the

_____

[18] In a footnote plaintiff acknowledges that the choice of law clause in the employment agreement calls for the application of New York law but asserts that Connecticut law should be applied to his unjust enrichment claim, *see* Pl.'s Opp'n to Summ. J. (Doc. # 75) at 34 n.29.  The result would be the same under Connecticut law, *see infra* n.19.

expense of another," *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 263 (2d Cir. 1984)

(citing *Miller v. Schloss*, 113 N.E. 337 (N.Y. 1916)).  A party seeking equitable relief based

upon unjust enrichment "must first show that a benefit was conferred upon the

defendant, and then show that as between the two parties enrichment of the defendant

was unjust," *id.*  However, "[t]he existence of a valid and enforceable written contract

governing a particular subject matter ordinarily precludes recovery in quasi contract for

events arising out of the same subject matter," *Clark-Fitzpatrick, Inc. v. Long Island R.

Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) (explaining that "[a] 'quasi contract' only applies in

the absence of an express agreement, and is not really a contract at all, but rather a legal

obligation imposed in order to prevent a party's unjust enrichment") (internal citations

omitted); *see also Miller*, 113 N.E. at 407 ("A quasi or constructive contract . . . is an

obligation which the law creates, in the absence of any agreement, when and because the

acts of the parties or others have placed in the possession of one person money, or its

equivalent, under such circumstances that in equity and good conscience he ought not to

retain it.").  Hence, "this principle has become formalized into a rule that generally bars a

finding of unjust enrichment in the face of a valid and enforceable written agreement,"

*Superintendent of Ins. v. Ochs*, 377 F.3d 209, 213 (2d Cir. 2004) (construing New York

law).[19]

---

[19] Even if the Court were to find Mr. Serricchio's terse conflict of law analysis persuasive, *see supra* n.18, the result would be the same under Connecticut law, *see Vertex, Inc. v. City of Waterbury*, 898 A.2d 178, 190 (Conn. 2006) ("Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, *and no remedy is available by an action on the contract*")

Mr. Serricchio admits that he signed the employment agreement upon beginning his tenure at Prudential, Pl.'s Local R. 56 Stmnt. at ¶ 16, and the employment agreement contains a term dictating that he retain "no right or interest in any revenue generated at [Wachovia Securities] by any customer" after leaving the firm, Defs.' Ex. E at ¶ 4(g). Mr. Serricchio does not deny that clients could leave one brokerage house for another,[20] and he does not show that the defendants took any action to prevent his clients from leaving Wachovia following his departure in 2004. Instead, his unjust enrichment claim appears aimed at the revenue stream generated by his book of business, and not the retention of the clients themselves. While § 4302(b) provides that USERRA supersedes any contractual term which limits a servicemember's rights under that statute, Mr. Serricchio has not identified any superceding USERRA right which is limited by the contractual term precluding his claim to monies generated from his accounts.[21] USERRA protects a service member's ability to gain reemployment and maintain an equivalent livelihood for, in Mr. Serricchio's case, a year following a period of absence due to service. However, USERRA says nothing about a service member's rights following termination of, or

(internal quotation omitted) (emphasis added).

[20] [Defense counsel]:   If a client advised Wachovia or PSI that he or she wanted to take his or her money and go, would there, to your knowledge, be anything that PSI or Wachovia could do about that?
   [Mr. Serricchio]:   I'm not certain what Wachovia could have done.

Serricchio Dep. (Def. Ex. D) at 204:17-22.

[21] *See, e.g. Breletic v. CACI, Inc.*, 413 F. Supp. 2d 1329, 1336 (N.D. Ga. 2006) (holding that § 4302(b) preempts the arbitration portion of an employment agreement where the plaintiff did not effectively waive his USERRA cause of action, but not voiding the entire agreement).

separation from, that employment, and as such does not preempt the term of the employment agreement which eliminates Mr. Serricchio's interest in commissions following the end of his employment. While plaintiff's recovery for proven USERRA violations may include lost commissions, his express agreement eliminating his claim to post-employment account proceeds forecloses his unjust enrichment claim. Summary judgment will be granted to the defendants on Count Five.

IV.     **The promissory note and breach of contract: claims and counterclaims**

The defendants bring two counterclaims against Mr. Serricchio, seeking recovery of transitional compensation paid to the plaintiff when he left Morgan Stanley Dean Witter to work for Prudential, and the twelve months of military pay he received from defendants under the military salary repayment agreement which the parties entered into at the time of Mr. Serricchio's departure for military service. Mr. Serricchio's Count Two claims breach of contract for failure to pay transactional compensation due.

A.     **Repayment of the transitional compensation promissory note**

The employment agreement between the defendants and Mr. Serricchio specifies that Prudential was to pay him $229,582 over fifty-five months, in the form of a $4,174.22 payment each month, Defs.' Ex. E at ¶ 5(a). A promissory note, in turn, obligated Mr. Serricchio to repay the $229,582 in identical monthly payments of $4,174.22, Defs.' Ex. E.

Notwithstanding the peculiar zero-sum structure of the reciprocal monthly payments between plaintiff and defendants, Prudential paid Mr. Serricchio the full $229,582 in his first month of employment. Although Mr. Serricchio argues that "the parties plainly understood the transitional compensation to be a signing bonus" which would be "forgiven once the newly-recruited employee achieved the requisite tenure at the company," Pl.'s Opp'n to Summ. J. at 38, the defendants deny that the design of the transitional compensation agreement renders the promissory note unenforceable in any way, Defs.' Reply (Doc. # 91) at 9.

The defendants have also moved for summary judgment on Count Two of Mr. Serricchio's complaint, which alleges that the defendants breached the employment agreement and violated Connecticut wage law by failing to pay the transitional compensation to the plaintiff. The plaintiff admitted in his deposition that Prudential gave him a check for the full amount of the transitional compensation during his first month of employment, Serricchio Dep. (Def.'s Ex. D) at 74:10-24, and has admitted in his Local Rule 56 statement the defendants' contention that Prudential paid Serricchio $229,582 "[w]ithin the first week or two of Serricchio's employment," Defs.' Local R. 56 Stmnt. at ¶ 17. Mr. Serricchio makes no mention of Count Two in his opposition to summary judgment, and has not pointed to any facts which would support his claim that the defendants violated the employment agreement and Connecticut law by failing to pay him the $229,582. Thus, summary judgment will be granted to the defendants on Count

Two.

As to the defendants' promissory note counterclaim, the defendants rely on the language of the promissory note which specifies that in the event of "the termination, for any reason whatsoever, of [Serricchio]'s employment with [Prudential]," the outstanding balance of the $229,582 "shall at the option of [Prudential] become immediately due and payable," Defs.' Ex. E. In defense, Mr. Serricchio contends that the defendants breached the implied covenant of good faith and fair dealing by their constructive discharge of him, and thus are themselves in breach of the agreement.

The implied covenant of good faith and fair dealing "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract," *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995) (internal quotation omitted). This covenant "encompasses any promises which a reasonable person in the position of the promisee would be justified in understanding were included," *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002) (internal quotation omitted). Thus, to determine whether a contracting party has breached its covenant of good faith and fair dealing, "a court must examine not only the express language of the parties' contract, but also any course of performance or course of dealing that may exist between the parties," *Tractebel Energy Mktg. v. AEP Power Mktg.*, 487 F.3d 89, 98 (2d Cir. 2007) (internal quotation omitted). Because there is a presumption of the good faith of contracting

parties exists, "'the burden of proving a breach of the covenant of good faith and fair dealing is on the person asserting the absence of good faith,'" *id.* (quoting 23 Williston on Contracts § 63:22 (4th ed. 2006)).

Mr. Serricchio argues that the acceleration clause found in the promissory note does not govern the outcome of the defendants' counterclaim because they intentionally pursued a course of action which purposefully deprived him of the ability to benefit from the transitional compensation and eliminated his ability to perform his obligation under the contract, *i.e.*, paying back the transitional compensation, by constructively discharging him. The defendants do not quarrel with the applicability of the implied covenant of good faith and fair dealing as a defense to the breach counterclaim, but rather assert that the circumstances of Mr. Serricchio's departure from Wachovia do not rise to constructive discharge.

The question which undergirds Mr. Serricchio's defense to the first counterclaim is the same question posed in his USERRA constructive discharge claim which requires trial determination: whether the situation in which Mr. Serricchio found himself upon returning to Wachovia was so bad as to leave a reasonable person in his circumstances no choice but to leave. Therefore, because material factual disputes as to the circumstances of Mr. Serricchio's departure from the employ of the defendants remain for trial, the defendants' first counterclaim cannot be resolved as a matter of law, and summary judgment will be denied.

**B.      Breach of the military salary repayment contract**

The parties executed another agreement, related to Mr. Serricchio's pay during military service, agreeing that the defendants would advance the plaintiff pay for a period of deployment, and Mr. Serricchio would in turn pay the defendants the salary which he received from the United States for that same period.[22]  The parties agree that the defendants advanced pay to Mr. Serricchio for twelve months, and that Mr. Serricchio has not remitted any of the military pay which he received during that period to the defendants, Pl.'s Local R. 56 Stmnt. at ¶¶ 74-75.  The defendants assert that by failing to reimburse them, Serricchio has breached the repayment agreement, which stipulates that "[i]f I retire or resign, or if my employment with Prudential is terminated for any reason, I will, nevertheless, comply with this repayment agreement."  Defs.' Ex. E.  Mr. Serricchio again opposes summary judgment on the basis that the defendants' conduct while he was away on military duty breached their implied covenant of good faith and fair dealing by rendering it impossible for him to enjoy the benefits of the military salary repayment agreement or meet his obligations under it.

The terms of the agreement, however, required simply that defendants pay Mr. Serricchio, and that he repay the defendants any money which he received from the military during the comparable period in which the defendants advanced him his salary.

---

[22] As Mr. Serricchio was paid on commission, the amount of his military leave "'salary' [was] based on the prior year's W-2 earnings," in accordance with Prudential's military leave policy.  Defs.' Ex. E.  The amount advanced to Serricchio "[i]n take-home terms . . . was in excess of 5,000 per month," Serricchio Dep., Defs.' Ex. D at 130:13-14.

Thus, Mr. Serricchio's performance under the contract depended solely on receipt of his *military* salary, which he was obligated to pay to the defendants so long as they had paid him his Prudential salary for the agreed period. While Mr. Serricchio has alleged action on the part of the defendants which, if true, might have impaired his ability to resume the career which he enjoyed prior to his military service, he has not set forth any facts showing that the defendants interfered with his ability to enjoy the benefit of, and to fulfill his obligations under, the military salary repayment agreement. Mr. Serricchio acknowledges the existence of the agreement, that the defendants paid him a salary for twelve months, that he received his military salary during that period, and that he did not turn over any of his military salary to the defendants.[23] Because there are no facts in the record supporting Mr. Serricchio's defense that the defendants contravened their obligation of good faith and fair dealing under the military salary repayment agreement, summary judgment will enter in favor of the defendants on their second counterclaim.

---

[23] *See Agency Rent A Car Sys. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996) (the elements of a breach of contract are "(i) a contract between the parties and (ii) an act . . . in violation of that agreement"); Restatement (Second) of Contracts § 235(b) (1981) ("When performance is due, however, anything short of full performance is a breach").

**V.     Conclusion**

For the foregoing reasons, the defendants' motion for summary judgment (Doc. # 59) is DENIED as to the plaintiff's USERRA claim (Count One) and the defendants' transitional compensation counterclaim, but GRANTED as to the plaintiff's breach claim (Count Two), negligence and unjust enrichment claims (Counts Four and Five), and defendants' military salary repayment contract breach counterclaim.

IT IS SO ORDERED.

/s/

_____

JANET BOND ARTERTON, U.S.D.J.

Dated at New Haven, Connecticut, this 14th day of March, 2008.